Good morning, Your Honors. My name is Lana C. C. Glenn. I'm here representing Mr. Rodriquez on direct appeal. As you're aware, there's a cross-appeal by the government. I'll try to direct your voice right into the mic. It's difficult to hear. Is that better? That's better. Okay. I'm representing Mr. Rodriquez on direct appeal with the government here on cross-appeal. I'm going to limit my remarks with respect to the issues of cross-appeal to approximately a minute and a half, and ask this Court that I reserve the remaining amount of time in rebuttal in response to the cross-appeal, as that seems to be the true issue that I'm assuming this Court is looking at. And so those issues are the ruling on the motion to suppress? Yes, ma'am. And? And the sufficiency of the evidence. And when I reread the briefs, and perhaps I should clarify, I would have rewritten them, because what the real issue was, I think, standing underneath the underlying issue on the sufficiency of the evidence, came out of the disputed facts regarding the consent given by Ms. Putnam to search the apartment where a gun was found, that ultimately ended up being found to be possessed by Mr. Rodriquez. And I simply wanted to point out that factually there were some disputes as to whether or not Mr. Rodriquez resided at the apartment. Apparently, if you look at the record, and I think that the government supplemented the record with its excerpts somewhat clearer than I did by providing the testimony that Mr. Rodriquez was a married man, the neighbor to Ms. Putnam. But the trial court made findings on that issue and resolved that dispute, correct? Yes, they did. Okay. And your position is those findings were erroneous? That's exactly right. Clearly erroneous? Clearly erroneous. If there is a choice between two versions of an event, how can selecting one version be clearly erroneous? What case authority do you have to support your argument that when a finder of fact chooses between two versions of a story, that that finding can be clearly erroneous? What case authority are you relying upon? Your Honor, I don't have case law to support that proposition for purposes of the argument this morning. I simply wanted to support to give to the Court the underlying testimony by Mr. Putnam, the son of Ms. Putnam, as well as the neighbor of Ms. Putnam, that perhaps. Now, all of that testimony was before the trial court? Yes, it was. That perhaps the relationship was not as intense as it appeared to be, and that that remained a disputed fact, which was the basis for the insufficiency of the evidence argument. And I would. If he was a resident there, is there still a question as far as the consent? No. No. No. And I would like to reserve the rest of my argument, if you will. Thank you, counsel. The direct appeal. Thank you. We'll hear from the government. Good morning. My name is Joseph Harrington. I'm an assistant U.S. attorney for the Eastern District of Washington. That's in Spokane. It's a beautiful city. We had our Ninth Circuit Conference there, and we really enjoyed the hospitality of your city. Well, thank you. I know the Federal Bar Association helped put on a symphony, I think, for the judges when they were there, and it was a pleasure to have all the judges in Spokane. Thank you for mentioning that. There are three issues, two issues raised by the defendant on the defendant's direct appeal, and then there's a third issue that's raised by the government on cross appeal. I'll briefly address all three. With respect to the first issue raised by the defendant, the defendant claims that the district court erred by denying the defendant's motion to suppress evidence based on a consent search that was conducted at the apartment in which he was living with his significant other named Ms. Putnam. There are several grounds to support the district court's decision. First is that the defendant was at the time on parole with the Washington State convictions. And so as a condition, there was a consent to search, an implied consent to search. Part of his condition of parole was that his he was subject to search of his person, place, and property. That doesn't give. Obviously, the Ninth Circuit has decided that those orders or those conditions are not valid as far as the Federal court is concerned. Is that not an issue here? Well, I think that there's other factors to consider as well. But in this case, with respect to the probation violation, there's clearly reasonable cause to believe that there had been a violation. Mr. Rodriguez, at the time, there was four felony arrest warrants out for his arrest. And at the time he was arrested, he had a chunk of heroin in his pocket, along with $950. So I think your position is there was probable cause for the search. Right. Aside from the condition. Correct. Yeah. And I think the district court found that as well in the record. So not only reasonable suspicion, but clearly probable cause as well. Second. Well, it's reasonable cause. Is that the same as probable cause? Oh, no. It's a much less standard problem. Right. In this case, there was not only reasonable cause, but clearly probable cause, which the district court found. Second, it's the government's position that the defendant doesn't he lacks standing to assert Ms. Putnam's Fourth Amendment right to privacy. I think it's well recognized that Fourth Amendment rights are not vicarious and it has to be asserted by the individual. And there's no dispute in the record that Ms. Putnam lived in the apartment a lot. But if he was a resident, wouldn't he have a right of privacy as well? You can't have it both ways to say he's a resident for some purposes, but not for others. Absolutely, Your Honor. That's correct. Although, in this case, the argument was that Ms. Putnam's consent to search the residence was not valid. It was involuntary. So the issue is whether Ms. Putnam had the ability to consent to the search of the apartment. So it wasn't a privacy issue in terms of the house itself. It was that she was cursed or whatever in terms of her. That's the allegation, Your Honor. So the defendant really can be asserting Ms. Putnam's right to privacy. And third, Ms. Putnam ended up, you know, being advised of her right to consent or not to consent. And she was advised of the limits of any consent that she might give the officers. And, in fact, that was set forth in the record, and the district court found that, in fact, the consent was not only knowing but also voluntary. And there was something to support that conclusion as well, because there was a consent form that was signed by Ms. Putnam, her neighbor who witnessed it, and then she actually followed the officers in through the search of the house. So it's the government's position that there was clearly sufficient evidence in the record to support the district court's denial of the motion to suppress. Were you going to address the sufficiency of the evidence in the jury's finding? Yeah. Thank you, Your Honor. That leads us to the second issue raised. Counsel, before we leave that, what do you say to our Soriano case where we address the issue of whether or not the motion to suppress was properly denied by looking at his girlfriend's consent to the search? It seems like that's analogous here and would give Mr. Rodriguez standing. Well, even if Mr. Rodriguez had standing to contest the consent search, it's standing for his own privacy rights. Okay. Okay. I thought you were saying something different. No. Okay. All right. Thank you. Thank you for clarifying that, Your Honor. That leads us to the second issue raised by the defense, and that's whether there's sufficient evidence in the record to support the conviction. What I would note is that during the trial of this case, there were two witnesses among other witnesses. There were two witnesses. One was an individual by the name of Mr. Packer, who had obtained this firearm and ultimately, about two days prior to the defendant being arrested, gave the firearm along with the holster and some ammunition to the defendant and asked whether the defendant could get rid of it, and the defendant agreed. Something unusual is, as the firearm was being handed over to the defendant, he used his shirt to hold the firearm, and it was the government's argument he was doing that to make sure he didn't have fingerprints left on the firearm. The following day, and approximately the day before Mr. Rodriguez was arrested, Ms. Putnam's young son, who also lived in the apartment, came home from school, saw the firearm on the table that day, and then again asked the defendant, what are you doing with that? And the defendant responded to the effect that I'm taking care of this issue and I'm going to be disposing of the firearm. So not only was he seen in possession of the firearm, but acknowledged that, in fact, he was taking steps to dispose of it properly. And then it was the next day that the search was conducted. The firearm was found underneath a couch on a coffee table near the defendant's mail, and the jury had to make those credibility findings, which the jury did, to determine whether Mr. Rodriguez was, in fact, in possession of that firearm. It's the government's position, respectfully, that there was clearly sufficient evidence to support the jury's conclusion in this case. Your Honor ---- The issue that the government raises is the sentencing one. That's right. And that's the third issue that I'd like to address. And it's a cross-appeal by the government. And the question is in this case whether Mr. Rodriguez has the predicate offenses for the application of the Armed Career Criminal Act. There's no question about the fact that Mr. Rodriguez has two prior violent felonies. That was determined by the district court. And that's undisputed. It's a 1980 California conviction for burglary and a 1982 California conviction for second-degree residential burglary. The question before the court is whether the defendant has an additional serious drug offense under the Act. It's the Corona-Sanchez. And that's where we get to the Corona-Sanchez case, which the district court relied on to determine whether those are ---- those three Washington State convictions are serious drug offenses, meaning that they're punishable by a term of imprisonment of ten years or more. The recidivism portion of the statute seems to be problematic for your argument. Well, at least that's the issue that was raised and addressed by the district court. Your Honor, I'd like to just point out some differences, and I think the way to distinguish Corona-Sanchez from this case is as follows. One, I think that from my reading of Corona-Sanchez, the core issue in that case was whether and when a misdemeanor conviction can somehow be transformed into a felony conviction. And I think that was the core analysis of the Corona-Sanchez case. Well, I think the core of the case was whether or not separate recidivist enhancements can be used when determining the sentence. Not ---- I don't think the pivotal issue was misdemeanor to felony. I think it was when is there a separate recidivist enhancement that has to be separated to determine the penalty imposed. And the subsequent ---- my reading of the subsequent cases looking at Corona-Sanchez is this talks about the core offense. I mean, what is the core offense that the court looks to to determine issues about punishment, and particularly the core offense with respect to whether something is a felony or a misdemeanor? And there's the case, the Ninth Circuit recent case, Moreno-Hernandez, 419F3906. It's a 2005 case. Talks about the core offense. Yes. The substantive offense is to be considered independently of any recidivist sentencing enhancement. Correct. And so where that gets us, respectfully, Your Honor, is that in this case, the core offense is drug trafficking and it's a felony offense. And I think that's the ---- But what's the punishment, then? Well, then you look to determine what the ---- and I think that's the issue is what really matters is what's the possible penalty that could be imposed for these Washington State convictions. The contrary or different than the Corona-Sanchez case, the Armed Career Criminal Act has been interpreted to be expansive, the language is expansive. It looks to cases involving things such as drug trafficking. That's different than the Corona-Sanchez case where I think that this court looked to the definition of what a theft offense was and determined that Congress wanted to narrow that whole definition of what theft offense is. That's to be distinguished from the Armed Career Criminal Statute, which even the Supreme Court has recognized should be given a broad sweep and expansively interpreted. And that was recognized in Taylor, 495 U.S. 575. Now, while it might not seem significant, there is another matter that can be ---- you can distinguish this case from Corona-Sanchez and that's the way the statutes have been codified. In Corona-Sanchez, there was the recidivist or the enhancement penalty was in a wholly separate section of the criminal statutes in California. In this case, the penalty provisions are just providing a stiffened penalty for the offenses that occurred and it's in the same article of the same criminal code. The offense itself is at Washington State revised code 695401 and it's 695408, part of the same chapter, which provides for the stiffened penalty for second and subsequent offenses in violation of the Drug Discipline Act. Counsel, then how do you explain our case in Aliano-Torres where we relied on Corona-Sanchez and disregarded a sentence in enhancement in the same section of the statute? And I must confess I'm not exactly sure about that case, Your Honor. In this case, what I can tell you is that ---- If you take me at my word that that case says what I represented to you, would that defeat your argument? I don't think so because of the nature of the way the Washington State criminal statute is laid out. In this case, it's in the same article of the same chapter and significantly in all three of these convictions, if you look at the judgment and commitment Superior Court in Spokane County, which is in the record, the court acknowledged that the maximum penalty for these all three offenses was 10 years, acknowledged by the defendant himself and acknowledged by the Superior Court in Spokane as well. So there's no question about the fact that not only did the defendant at the time know he was facing a 10-year maximum penalty, but that's what the court looked to as well. And so the question is, is that 10 years pursuant to the statute or including an enhancement of some type? Well, it's the government's position. This is just stiffened penalties. So it would be, yes, applying the ---- it's applying the ---- both sections of the criminal code. And it's the government's position that that's what 924E says, and that is that serious drug offenses are those that can be punished by a term of imprisonment of 10 years or greater. We understand your argument, counsel. You've exceeded your time. All right, Your Honor. Thank you. Thank you. Your Honors, I don't think that I can put into any better language than the district court judge did in his sentencing order, which is in the supplemental excerpts of records at page 126 through page 134. Excuse me, through 134, if you could not hear me. And for all practical purposes, I would be reiterating what that judge said. And we are asking this Court to uphold the judge's finding with respect to the separation or the cleaving, if you will, of the statutory crime and the recidivist statute. However, just for the record, I think whether you look at Taylor, which clearly outlines the purposes and intent and legislative concerns of the Armed Career Criminal Act, as well as looking at the definitional scheme for a violent crime defining burglary, and if you look further to the Corona case that we've already spoken of and the every other case that has been cited in the record, clearly stands for the proposition that you separate the statutory definition for purposes of a predicate offense from the recidivism statute. What about opposing counsel's argument that this case is different than Corona-Sanchez because of the way the statute was placed in the Washington Code, made it all part of one sentence? Your Honor, taking you at your word with respect to your inquiry to him and to the case that apparently Mr. Harrington failed to acknowledge where the statutes were so close together, that seems to have no bearing on the intent of what sets up the predicate offense. Whether they're in close proximity or not, if it's a recidivist statute, it should be separate from the statutory definition of the crime. We've got convictions that do not have a maximum term of 10 years. What about opposing counsel's argument that in Corona-Sanchez we were looking at theft offenses, which don't have the same serious import as drug offenses, and that the Armed Career Criminal Act was more inclined toward giving serious sentences for drug offenses as opposed to theft offenses? What's your response to that? Your Honor, they segregate the predicate offenses for purposes of the Armed Career Criminal Act into that which is the violent act, a violent crime, where there's a sentence beyond a one-year limit. And those are well-defined as crimes that are endangering the lives of others. Whereas with the serious drug offense, I'm trying to find exactly what case it was stated in. They're looking at, I believe in one case it said the most serious drug trafficking cases with large quantities of drugs. But the basic, they're not looking at the underlying facts of either crime. They're looking at the statutory definition, which is in terms of to what punishment that crime is exposed. I don't know if I've answered your question. But any time you have a conviction with a 10-year maximum, that can be a predicate offense, and as Judge, the Honorable Judge Whaley indicated in his decision, you simply do not have that in this case. Do you have any other questions? It appears not. Thank you, counsel. Thank you for your time. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: Rawlinson, Clifton, Marshall